**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| W&L VENTURES, INC., | § | |
| TEXAS 1ST PRIORITIES, INC., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-00754 |
| | § | |
| EAST WEST BANK, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case arises out of the sale of land at foreclosure.  The plaintiffs, W&L Ventures, Inc. (WLV) and Texas 1st Priorities (TFP), sued East West Bank.  The plaintiffs hold junior liens in a certain tract of land.  East West Bank is the senior lienholder in that tract and in two related tracts, including the tract that is primarily at issue in this case.  The plaintiffs alleged that East West Bank represented that they would have an opportunity to purchase the tract and that all the tracts would be sold together.  The plaintiffs alleged that based on these representations, they did not appear at the foreclosure sale.  East West Bank sold the primary tract at foreclosure to a third party.  The plaintiffs alleged that they did not have an opportunity to bid and that the amount paid was inadequate.   The plaintiffs sought damages for fraudulent and negligent misrepresentation and promissory estoppel and a declaratory judgment that the Bank's foreclosure sale of the land to a third party was void.

In a separate Memorandum and Opinion, this court held that the purchaser at the foreclosure sale would not be added as a defendant and denied the plaintiffs' motions to amend and remand.  This Memorandum and Opinion addresses two motions:  1). East West Bank's motion to dismiss the wrongful foreclosure claims, the fraudulent misrepresentation claim, and

the "declaratory judgment act claim"; and 2). East West Bank's motion for partial summary judgment that consequential damages are not available remedies for negligent misrepresentation and promissory estoppel.

After thorough consideration of the amended complaint; the motions, response, reply, and surreply; counsel's oral arguments; and the governing law, the court grants East West Bank's motion to dismiss the wrongful foreclosure, fraudulent misrepresentation, and "declaratory judgment act" claims, with prejudice and without leave to amend.  Because the plaintiffs abandoned their claims for consequential damages for the negligent misrepresentation and promissory estoppel claims, the motion for partial summary judgment dismissing those claims is moot.

The reasons for these rulings are explained below.

## I.    The Motion to Dismiss

### A.    The Allegations in the First Amended Complaint[1]

The first amended complaint (FAC) alleged that GBI Group LLC owned three tracts of land: the 112-acre Riverstone Tract; the 315-acre Beasley Tract; and another 33-acre tract.  (FAC ¶¶ 4–5).[2]  East West Bank held senior cross-collateralized liens on all the Tracts, allowing the Bank to foreclose on all the loans if the borrower defaulted on any of them.  The plaintiffs

---

[1]  In a prior the prior Memorandum and Opinion, this court set out the facts as presented in the state-court petition and in the proposed amended complaint the plaintiffs sought leave to file. The operative pleading for the purposes of this motion to dismiss and for partial summary judgment is the first amended complaint, which was filed on April 8, 2013.  (Docket Entry No. 17).

[2]  In its motion to dismiss and for partial summary judgment, East West Bank argues that there were in fact two Riverstone Tracts.  The first Tract originally had 178 lots, but at the time of the bankruptcy, only 44 remained, and all were sold during the bankruptcy proceedings through court order.  The only Riverstone Tract remaining at the time of the foreclosure was the 33-acre Riverstone Two Tract.  The Bank argues that the references to the "Riverstone Tract" are properly understood as references to the 33-acre "Riverstone Two" Tract.  (Docket Entry No. 20 at 4–5).

2

provided GBI short-term financing and had a second and third lien, respectively, on the Beasley Tract to secure that financing.  (*Id.* ¶ 5).

In 2011, GBI filed for bankruptcy.  (*Id.* ¶ 4).  The plaintiffs and East West Bank appeared as creditors in the bankruptcy.  After the Bankruptcy Court lifted the stay, the Bank filed its foreclosure notice on December 11, 2012.  On January 1, 2013, East West Bank foreclosed on and sold the Riverstone Tract to Perry Homes, LLC for $1.7 million.  (*Id.* ¶¶ 4–5).

The plaintiffs allege in the first amended complaint that "in late 2012 or possibly during the day of an August 22, 2012 hearing before a bankruptcy court, [East West] Bank expressly represented to a representative or representatives of the [p]laintiffs and/or other unrelated parties, either together or independently, as follows: (1) that it would not and could not sell the Riverstone Tract without also selling the Beasley Tract and [the] other 33 acre tract; (2) that the Bank intended to only sell all of such property in bulk at any foreclosure or subsequent sale; and (3) that [p]laintiffs would be allowed to make an offer to purchase the Riverstone Tract, the Beasley Tract, and the other 33 acre tract."  (*Id.* ¶ 14).  Before the foreclosure date, the plaintiffs alleged that they had offered to purchase the Beasley Tract and the 33-acre Tract, but East West Bank refused the offer because it did not want to split up the three "cross-collateralized" tracts. *Id.*  The plaintiffs allege that they relied on these representations and did not appear at the date and time for the foreclosure sale.  (*Id.* ¶ 15).  The plaintiffs claim that had they been at the foreclosure sale, they would have bid more for the Riverstone Tract than the "grossly inadequate" $1.7 million that Perry Homes paid.  (*Id.* ¶ 16).  The plaintiffs also allege that defects in the time and place of the foreclosure notices caused inadequate bids and the "grossly inadequate" sales price.

The plaintiffs' claims for fraudulent and negligent misrepresentation, wrongful foreclosure, and estoppel are based on the allegation that East West Bank's misrepresentations caused the plaintiffs not to attend the foreclosure and that the defects in the notices chilled potential bidders.  The plaintiffs seek actual and consequential damages, statutory damages, and equitable relief, including a declaratory judgment that the plaintiffs have a legal or equitable interest in all three tracts, the foreclosure sales were void, and that East West Bank violated the Texas Property Code.  (*Id.* ¶¶ 17–20).

### B.      The Legal Standard for a Motion to Dismiss

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To withstand a Rule 12(b)(6) motion, a complaint must "contain enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 440 U.S. at 570.  The Supreme Court has explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."

### C.      Analysis

#### 1.      The Claim of Wrongful Foreclosure as to the Riverstone Tract

The complaint and briefs focus on the alleged wrongful foreclosure of the Riverstone Tract.  For this court to grant the relief the plaintiffs seek, the plaintiffs must first establish that

they have standing to pursue the claim.  Because the plaintiffs have not established standing, the court grants the motion to dismiss the wrongful foreclosure claim as to the Riverstone Tract. The dismissal is with prejudice because the complaint has already been amended and further effort to amend would not cure the defect.

"The issue of identifying who properly has standing to contest a foreclosure sale in Texas is well settled."  *Goswami v. Metropolitan Sav. &  Loan Ass'n,* 751 S.W.2d 487, 489 (Tex. 1988).  "As a general rule, only the mortgagor[, that is, the debtor,] or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to [a] deed of trust."  *Id.* (citations omitted).  "However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale."  *Id.*

The plaintiffs have not identified a legal or equitable property interest in the Riverstone Tract.  They had no lien or other interest in that Tract.  *See Reeves v. Wells Fargo Home Mortg.*, 544 Fed. App'x 564 (5th Cir. 2013) (unpublished) (finding that a plaintiff who acquired a property interest through a recorded quit-claim deed and made payments on the related note had an equitable interest sufficient to challenge the foreclosure sale); *Kiper v. BAC Home Loans Serv., LP*, 884 F. Supp. 2d 561 (S.D. Tex. 2012) (finding that the plaintiff had standing to challenge a foreclosure sale because his wife was the borrower on the loan and the signer on the deed of trust and the home was presumptively community property); *Goswami,* 751 S.W.2d at 489 (Tex. 1988) (concluding that a bank's acceptance of mortgage payments from a third party established the third party's equitable interest in the property); *Hitchock Props., Inc. v. Levering*, 776 S.W.2d 236, 238 (Tex. App. –Houston [1st Dist.] 1989) ("Thus, if nothing else, the granting of an option [supported by consideration] creates an 'equitable' interest in land . . . .").

East West Bank's alleged oral representation that it would give the plaintiffs an opportunity to bid on the Tracts and that all three Tracts would be sold together does not, as a matter of law, give the plaintiffs a legal or equitable property interest in the Riverstone Tract that allows them to challenge the foreclosure sale of that Tract to a third party.  The plaintiffs have not identified an equitable stake or a legal interest in the Riverstone Tract that would allow them to bring this wrongful foreclosure claim against the Bank.  Amending the complaint to cure this defect would be futile.  The wrongful foreclosure claim as to the Riverstone Tract is dismissed with prejudice.

### 2.   The Claim for Wrongful Foreclosure of the Beasley Tract

The plaintiffs hold junior liens on the Beasley Tract.  Texas law is not completely clear as to whether, and when, a junior lienholder may sue for wrongful foreclosure.  *See Granato v. Deutsche Bank Nat'l Trust Co.*, No. SA-12-cv-417(DAE), 2013 WL 5839326, at *3 (W.D. Tex. Oct. 29, 2013).  A junior lienholder has standing to challenge a foreclosure sale "to the extent that its rights will be affected."  *Goswami*, 751 S.W.2d at 489.  "A junior lienholder takes an interest in the property subordinate to the interests of the senior lienholder, and a foreclosure sale of the senior lien extinguishes that interest."  *Elbar Investments, Inc.v. Wilkinson*, No 14-99-002967-CV, 2003 WL 22176624, at *2 (Tex. App. –Houston [14th Dist.] Sept. 23, 2013) (citing *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 806 (Tex. 1978); *First Nat'l Bank in Dallas v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex. 1975)).  "It is perfectly plain, therefore, that a junior lienholder has an interest in the subject-matter of [a foreclosure] sale to the extent, at least of his rights in the property sold, and . . .is entitled to show the *improper exercise of the power of sale*, and thus show the *invalidity* of the sale to cut off his rights."  *Estelle v. Hart*, 55 S.W.2d 510, 513 (Tex. Comm'n App. 1932) (emphasis added).  The

Texas Supreme Court has identified *Estelle* as holding was that "a junior lienholder has standing to show the *invalidity* of a trustee's sale because his interest in the property is affected by such a sale." *American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 586 (Tex. 1975) (emphasis added). Texas courts agree that this means that a junior lienholder "may collaterally attack the sale only if it is entirely void." *Elbar*, 2003 WL 22176624, at *2 (citing *Estelle*, 55 S.W.2d at 513). "A party having no privity with the mortgagor may not complain of irregularities that would render the sale merely voidable." *Id.* (citing *Tex. Osage Coop. Royalty Pool v. Crighton*, 188 S.W.2d 230, 233 (Tex. Civ. App. 1945, writ ref. w o.m.)).

"'Void' means the sale has no legal efficacy and is incapable of being enforced by law, such as a foreclosure sale of a lien not in default." *Id.* (citations omitted). As the *Estelle* court stated, the junior lienholder can show "an improper exercise of sale" such that the junior lienholder's rights were not extinguished. *See Estelle*, 55 S.W. at 513. Another example of a void foreclosure sale that is a "mere nullity, passing no title and conferring no rights" to the purchaser. *See, e.g., Wesley v. Amerigo, Inc.*, No. 10-05-0041-CV, 2006 WL 22213, at *2 (Tex. App. –Waco Jan. 4, 2006) ("[W]hen Universal Home Care, as the senior lienholder, foreclosed upon the Wesleys' Hillsboro property, Amerigo's junior lien was extinguished. When Amerigo attempted a second foreclosure sale on the Hillsboro property, the Trustee of the sale had no title to transfer to Amerigo. Because title never passed to Amerigo, the foreclosure sale is void."); *see also id.* (citing *Spring Branch Ind. School Dist. V. Siebert*, 100 S.W.3d 520, 524 (Tex. App. Houston [1st Dist.] 2003, no pet.) (finding a foreclosure on a tax lien void because it failed to describe a definite tract of land); *Oles v. Curl*, 65 S.W.3d 129, 131 (Tex. App. –Amarillo 2001, no pet.) (finding a foreclosure sale void because it violated the automatic stay)).[3]

---

[3] *See also, e.g., Martin v. Cadle Co.*, 133 S.W.3d 897, 904 (Tex. App. –Dallas 2004, pet. denied) ("Because the lien was released, there was no lien to foreclose, and the substitute trustee had no

"'Voidable' describes a sale that may be avoided, but is not until the "fatal vice in the transaction has been judicially ascertained and declared." *Elbar,* 2003 WL 22176624, at *2. The Fifth Circuit has recently discussed the void/voidable distinction in the context of debt-assignment validity. *See Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) ("[A]n obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment void."). While a mortgagor or one in privity with the mortgagor might have cause to challenge a foreclosure proceeding, a junior lienholder does not have standing to seek a judicial determination that actions that might render a foreclosure voidable actually did so; only that the transaction was without legal efficacy such that a foreclosure is entirely unenforceable at law before the transaction even commenced. A contrary rule would allow a third party to a deed of trust to void a transaction that the principals do not challenge, on the basis that a party to the deed of trust could have argued that the transaction was voidable.

The issue here is whether the plaintiffs, as junior lienholders, have alleged noticing irregularities and foreclosure defects that would make the Beasley Tract foreclosure entirely void as opposed to voidable. The plaintiffs assert violations of § 51.002 of the Texas Property Code relating to the notice of the time and place of the foreclosure sale. Texas courts are clear that noticing irregularities and noticing defects do not make the foreclosure entirely unenforceable. *Elbar*, 2003 WL 22176624, at *2 ("A party having no privity with the mortgagor may not complain of irregularities that would render the sale merely voidable, including complaints regarding the manner of notice. . . . Elbar complains that it did not receive notice of the sale and that the posted notice was defective. However, there is no requirement that personal notice be

power to transfer title to the property."); *Chale Garza Investments, Inc. v. Madaria*, 931 S.W.2d 597, 600 (Tex. App. –San Antonio 1996, writ denied) ("When a foreclosure sale is void, the purchaser does not acquire title to the property.").

given to those who were not parties to the deed of trust."); *see also Granato*, 2013 WL 5839326, at *4 (citing *Jones v. Bank United of Texas, FSB*, 51 S.W.3d 341, 344 (Tex. App. 2001) ("In Texas, a junior incumbrancer or inferior lienholder is not entitled to notice of foreclosure by a prior incumbrancer or senior lienholder."); *Elder v. Calvery Credit Corp.*, No. 14-96-00099-cv, 1997 WL 528990, at *3 (Tex. App. Aug. 28, 1997) ("There is no Texas authority for imposition of a trustee's duty under a deed of trust to any third party, including a junior lienholder. A substitute trustee owes no duty to a junior lienholder, not even a duty to send notice of a foreclosure sale. There is no requirement even that personal notice be given to any persons who were not parties to the deed of trust."); *Harbert v. Denman*, 44 S.W.2d 441, 443 (Tex. Civ. App. 1931) ("[I]t is well settled that a sale by a trustee under the powers conferred by the deed of trust cuts off all right, title, or equities of a junior lienholder without notice of the sale.").

As junior lienholders, the plaintiffs were not entitled to receive notice of the foreclosure and sale. As a result, any irregularities in the notice they did receive cannot provide them a basis to claim that the foreclosure sale was void or to allow them to claim wrongful foreclosure on a theory that the noticing requirements made the foreclosure sale voidable.

Having no right to receive notice of the foreclosure sale, the plaintiffs cannot assert a wrongful foreclosure claim against East West Bank based on alleged errors in the notices that it did receive.[4] The plaintiffs' wrongful foreclosure claim as to the Beasley Tract, based on alleged noticing defects and irregularities, is dismissed with prejudice.

The plaintiffs also claim that the time and place of the Beasley Tract foreclosure sale violated the Texas Property Code and made the foreclosure unenforceable. Those claims are also dismissed with prejudice because the complaint and briefing do not show that the alleged

---

[4] The same reasoning is an alternative reason to dismiss the wrongful foreclosure claim on the Riverstone Tract.

violations of the Texas Property Code made the foreclosure sale entirely void, as described above.

The wrongful foreclosure claims fail for other reasons as well. The Texas Property Code requires that the foreclosure occur "between 10 a.m. and 4 p.m. of the First Tuesday of every month." Tex. Prop Code. § 51.002(a). It is established in records properly considered in a motion to dismiss, and undisputed, that the sale at issue occurred between those times on the first Tuesday of the month. The Texas Property Code also requires that the sale occur at the county courthouse in the county in which the land is located or an area where the commissioner's court of a county designates. *See* Tex. Prop Code. § 51.002(a), (h). It is disputed that the foreclosure sale occurred at the appropriate place, and the complaint also alleges that the sale occurred 15 minutes before the noticed time. Even accepting the alleged violations as true for the purpose of this motion, the plaintiffs do not state a claim on which relief can be granted.

"A plaintiff asserting wrongful foreclosure must show (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal connection between the defect and the grossly inadequate selling price." *Motten v. Chase Home Finance*, 831 F. Supp. 2d 988, 994 (S.D. Tex. 2011) (citing *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.–Corpus Christi 2008, no pet.)). "The plaintiff challenging a foreclosure sale must plead and ultimately prove any irregularities that rendered the sale invalid." *Id.* The plaintiffs' complaint is almost entirely focused on the foreclosure sale of the Riverstone Tract. The plaintiffs had no legal or equitable interest in that Tract. The complaint mentions the Beasley Tract only in passing. There is no allegation of any inadequate sales price for the Beasley Tract. There is no allegation that the plaintiffs were damaged by the foreclosure sale of the Beasley Tract; the only damages they assert were as a result of not being able to bid on the Riverstone

Tract.  At oral argument, the plaintiffs focused on the loss of the opportunity to bid on the Riverstone Tract. The briefing on the motion to dismiss focused almost entirely on the Riverstone Tract.

The complaint fails to plead and the briefing fails to address any problem with the selling price of the Beasley Tract, that the selling price was grossly inadequate, and that defects in the foreclosure proceedings for the Beasley Tract caused a grossly inadequate sales price.  *See, e.g.,* FAC ¶ 21.  The complaint has been amended once without addressing these deficiencies.   The failure to raise issues relating to the Beasley Tract sales price or defects at the foreclosure sale appears to have waived the right to do so. The claim for wrongful foreclosure of the Beasley Tract is dismissed, with prejudice.

The wrongful foreclosure claim as to the Beasley Tract fails for an additional reason as well. When "a junior lienholder's lien is extinguished because of a senior lienholder's foreclosure sale, and the proceeds from the sale are not sufficient to satisfy the junior lien, the proper remedy is to pursue a judgment against the debtor for the unpaid amount of the lien." *Wesley*, 2006 WL 22213, at *3 (citing *Diversified Mort. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.,* 576 S.W.2d 764, 808 (Tex. 1978) ("[Junior lienholder's] proper remedy [is] in the form of money judgment against [the debtor] for the unpaid amount of its lien on the property.")).  The debtor, GBI Group, is not a party, and the plaintiffs do not seek a judgment against them.

The wrongful foreclosure claim as to the Beasley Tract is dismissed with prejudice.

### 3.     The Fraudulent Misrepresentation Claim

To establish common-law fraud under Texas law, a plaintiff must establish:

> (1)  that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made,

11

> the speaker knew it was false or made it recklessly without any
> knowledge of the truth and as a positive assertion; (4) the
> speaker made the representation with the intent that the other
> party rely upon it; (5) the party acted in reliance on the
> representation, and (6) the party thereby suffered injury.

*Turner v. Pavilicek*, H-10-749, 2011 WL 4458757, at *11 (S.D. Tex. Sept. 22, 2011) (citations omitted).  Fraud allegations "must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. PRO. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1993) (quoting *Williams v. WMX Techs., Inc.* 112 F.3d 175, 179 (5th Cir. 2003))  "The pleader must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams*, 112 F.3d at 177.

The plaintiffs allege that "the Bank made material representations to the Plaintiffs that were false.   When the representations by the Bank were made to the Plaintiffs, the representations were false or recklessly made, as a positive assertion, and without knowledge of its truth.  The Bank made the representations with the intent that the Plaintiffs rely on them, and the Plaintiffs relied on the representations.   The representations caused the Plaintiffs injury, which is within the jurisdictional limits of the Court."  (FAC ¶ 22).  As an initial matter, these allegations are conclusory.  They do not allege facts, but rather restate the legal elements of the cause of action.

Reviewing the complaint in its entirety, the misrepresentations alleged are that "in late 2012 or possibly during the day of an August 22, 2012 hearing before a bankruptcy court, [East West] Bank expressly represented to a representative or representatives of the [p]laintiffs and/or other unrelated parties, either together or independently, as follows: (1) that it would not and

could not sell the Riverstone Tract without also selling the Beasley Tract and [the] other 33 acre tract; (2) that the Bank intended to only sell all of such property in bulk at any foreclosure or subsequent sale; and (3) that [p]laintiffs would be allowed to make an offer to purchase the Riverstone Tract, the Beasley Tract, and the other 33 acre tract."  (FAC. ¶ 14).  That allegation does not identify who made the statements, who the statements were made to, or how those statements were fraudulent.  The complaint does not even state when the statements were made. The complaint on its face fails to meet the pleading standards of Rule 9(b).

In their briefs, the plaintiffs stated as follows:

> The Plaintiffs have alleged that the Bank represented that it "intended to only sell all of such property in bulk at any foreclosure or subsequent sale."  Specifically, the Plaintiffs have alleged that the Bank refused "to split up the three tracts because all three tracts were cross-collateralized under the same loan documents originating from the United Commercial Bank."  Based on this promise, which was false, the Plaintiffs did not appear at the foreclosure sale.  But for the Bank's misrepresentation, the Plaintiffs would have bid, or at least attempted to do so assuming they could have found the correct location in light of the improper notice."

(Docket Entry No. 23 at 18).  The fraud claim, as the plaintiffs explain it in their briefs, appears to be that they chose not to attend the foreclosure sale because they believed that all three Tracts had to be sold together.  Had they known that the Tracts would be sold separately, they would have attended. The underlying logic is not clearly explained.  The plaintiffs did not seek leave to amend their complaint to further explain these allegations.

The plaintiffs attached a declaration from Rocky Lai, the plaintiffs' corporate representative, more fully developing the argument.  He allegedly met with two East West Bank Officers, Esau Liu and Judith Chang, in August 2012.  At that meeting, Mr. Lai "repeatedly expressed . . . intent to acquire [the] Beasley Tract in order to protect our second and third liens. We also expressed interest in buying the Riverstone Two tract since we are a developer of

Riverstone."  Judith Chang, however, "*mentioned* that [the Tracts] were cross-collateralized and therefore the Bank had to foreclose them all.  Easau Liu commented that [plaintiffs] would be the primary person to consider for buying these properties[, the Beasley and Riverstone Tract,] since [plaintiffs] have the second and third liens and we have been a hands-on Riverstone developer" (Docket Entry No. 23-1) (emphasis added).   Additionally, Mr. Lai stated that in September 2012," East West Bank's lawyer, Karen Murray, informed counsel for East West Bank that the "Bank was only *inclined* to sell all tracts together in bulk, rather than piecemeal, due to the cross-collateralization of the loans."  *Id.* (emphasis added).  The declaration, however, is not properly considered on a motion to dismiss.

The complaint allegations are that East West Bank stated that it intended to sell all three Tracts together.  But East West Bank clearly issued and posted notice that the Tracts were going to be sold separately.  The plaintiffs' complaint is clear that they had actual knowledge that East West Bank was foreclosing on the properties separately before the foreclosure sale occurred. The public notice, which is properly considered on a motion to dismiss, posted after the alleged misrepresentations, make implausible the allegation that the plaintiffs justifiably relied on the alleged misrepresentations in deciding not to attend the foreclosure sale.  *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance. . . . In measuring justifiability, we must inquire whether, given a fraud, plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud, [make it] extremely unlikely that there is actual reliance on the plaintiff's part.  Moreover, a person may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted." (citations and quotation marks omitted)).

There is another deficiency in the complaint allegations of fraudulent misrepresentation. The complaint does not allege facts that, if proven, would reasonably support an inference that the speaker knew that the statement was false when made or made a reckless positive assertion about its truth.  Additionally, the complaint fails to plead facts that, if proven, would reasonably support an inference that East West Bank intentionally made the representations to induce the plaintiffs not to show up at the foreclosure, especially given the complaint allegations that East West Bank helped other bidders find the correct location so they could appear and bid.

The fraud claim is dismissed.  The dismissal is with prejudice because prior amendment has not cured the deficiency, and the plaintiffs' briefs and related submissions indicating how the complaint might be amended show that such an amendment would not cure the deficiency and would instead be futile.

### 4.    The Texas Declaratory-Judgment Claim

East West Bank moved to dismiss the "declaratory judgment claim" under Rule 12(b)(6). "A declaratory judgment claim cannot stand alone; instead the 'Texas Uniform Declaratory Judgments Act is merely a procedural device; it does not create any substantive rights or causes of action.'"  *Davis v. Silver State Fin. Servs.*, No. H-13-1432, 2014 WL 713235, at *10 (S.D. Tex. Feb. 20, 2014) (quoting *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996) (internal citation omitted)).  "Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive."  *Id.* (citations omitted).

The claims for wrongful foreclosure and fraudulent misrepresentation have been dismissed.  To the extent the plaintiffs seek a declaratory judgment as a remedy for those causes of action, the corresponding request for declaratory relief is dismissed as well.

The plaintiffs also seek attorneys' fees under the Texas Declaratory Judgment Act. The Fifth Circuit has clearly stated that "a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law." *Camacho v. Texas Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006) (citing and expressly affirming *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208 (5thc Cir. 2005)). The claim for attorneys' fees under the Texas Declaratory Judgment Act is dismissed with prejudice.

## II.   The Motion for Partial Summary Judgment

### A.   The Legal Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record...." Fed. R. Civ. Proc. 56(c)(1)(A). "[T]he plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B.   Analysis

East West Bank has moved for partial summary judgment on the plaintiffs' "claims for 'consequential damages' under theories of promissory estoppel and negligent misrepresentation" because Texas law "forbids 'consequential damages' such as lost profits or benefit of the bargain damages" for those two causes of action. (Docket Entry No. 20 at 20 (citing *Fed. Land Bank v. Sloan*, 825 S.W.2d 439, 442 (Tex. 1991); *Fretz Constr. Co. v. Southern Nat'l Bank*, 626 S.W.2d

16

478, 483 (Tex. 1981)).  The plaintiffs respond that they "have not sought the relief suggested by [East West Bank] with respect to the referenced claims" and that the court should deny the motion.  Because the complaint does not specifically seek consequential damages for these two claims and because the plaintiffs have formally abandoned any claim to consequential damages for those two theories of liability, the court finds that the motion for summary judgment is moot.

## III.   Conclusion

East West Bank's motion to dismiss is granted as follows: (1) the claim for wrongful foreclosure of the Riverstone Tract is dismissed with prejudice; (2) the claim for wrongful foreclosure of the Beasley Tract is dismissed with prejudice; (3) the claim for fraudulent misrepresentation is dismissed with prejudice; (4) the claim for attorneys' fees under the Texas Declaratory Judgment Act is dismissed with prejudice; (5) the claims under the Texas Declaratory Judgment Act seeking declarations in respect to items (1)-(4) are dismissed with prejudice.  East West Bank's motion for summary judgment is denied as moot.  East West Bank has not moved for dismissal or judgment on the negligent misrepresentation claim or the promissory estoppel claim.  A status conference is set for **April 4, 2014**, at **5:00 p.m.**, in Courtroom 11-B to address these claims and any remaining issues.

SIGNED on March 26, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge